IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DAVID BOGDAN, ESQ. ADMINISTRATOR OF THE ESTATE OF C.B., DECEASED, and CHRISTOPHER BAYLOR,<br>　　　　*Plaintiffs,*<br><br>　　v.<br><br>DOREL INDUSTRIES, INC., DOREL CHINA AMERICA INC. d/b/a Monbebe, DOREL JUVENILE GROUP, INC. d/b/a Monbebe, DOREL JUVENILE USA d/b/a Monbebe, MONBEBE, and WAL-MART, INC.,<br>　　　　*Defendants.* | Civil No. 23-3622 |

Costello, J.                                                                                       September 12, 2025

**<u>MEMORANDUM</u>**

　　　The Estate of C.B. and Christopher Baylor ("Baylor") sued Dorel Industries, Inc., Dorel China America Inc., Dorel Juvenile Group, Inc., Dorel Juvenile USA, Monbebe, and Wal-Mart, Inc. ("Defendants"), alleging that a defective bassinet mattress, manufactured or sold by Defendants, caused Baylor's infant son, C.B., to suffocate. Plaintiffs' theory, that C.B. suffocated on the bassinet mattress while he slept, is based on Plaintiffs' claim that the mattress was the only item in the bassinet when C.B. was placed there to sleep. However, the evidence developed during discovery showed that the mattress was covered with a thick gray blanket. Defendants now move for summary judgment arguing that Plaintiffs are unable to establish that the alleged defective mattress was the cause of C.B.'s death. As is detailed below, the Court agrees and will grant the motion for summary judgment.

I.   **FACTS**

    A.   **Death of C.B. and Subsequent Lawsuit**

C.B. was placed on his back to sleep in a bassinet between 8:00 A.M. and 9:00 A.M. on August 28, 2021.  Stmt. of Undisputed Facts, ECF No. 53 ¶¶ 2, 4-6.[1]  Defendants designed, sold, or manufactured the bassinet.  *Id.* ¶ 2.  Baylor and Miaya Long ("Long"), C.B.'s mother, fell asleep after placing C.B. in the bassinet.  *Id.* ¶ 6.  Between 11:00 and 11:30 A.M., Baylor found C.B. face down and unresponsive.  *Id.*; Baylor's Dep., ECF No. 53-5 at 12; Baylor's Stmt. to Police, ECF No. 53-11 at 12.  C.B. died later that day.  Coroner's Rep., ECF No. 53-6 at 4, 6.  After the incident, Long observed a stain on the bassinet mattress where C.B.'s face had been laying.  Long's Dep., ECF No. 53-4 at 12.  However, Baylor "did not observe any vomit, milk, spit-up, blood or mucous" when he found C.B. unresponsive.  Denis Rosen, M.D.'s Report, ECF No. 53-7 at 6.

Plaintiffs sued, alleging design and failure-to-warn product defects.  Stmt. of Undisputed Facts, ECF No. 53 ¶¶ 16-18, 20.  With respect to the alleged design defect, Plaintiffs claimed that the bassinet mattress was too soft and therefore restricted C.B.'s mouth and nose when he rolled onto his stomach, causing his death.  *Id.* ¶ 19.  With respect to the failure-to-warn theory, Plaintiffs claimed that Defendants failed to warn users about the suffocation hazard of the memory foam mattress.  *Id.* ¶ 20.  Both theories assumed that C.B.'s face made direct contact with the bassinet mattress.  *Id.* ¶¶ 16-18.  Indeed, Plaintiffs' experts based their opinions on this condition and collectively opined that C.B. suffocated because the mattress covered his nose and mouth when he rolled onto his stomach.  *Id.* ¶¶ 19-22.

---

[1]    Plaintiffs have not responded to Defendants' Statement of Undisputed Facts.  Therefore, these facts are undisputed.  *See* Fed. R. Civ. P. 56(e)(2).

The deposition testimony of Baylor and Long was consistent with this theory. Baylor and Long testified that there was nothing in the bassinet other than the mattress when C.B. was placed there. *Id.* ¶¶ 8-9. In addition, Baylor insisted there was nothing in the bassinet other than the mattress when he found C.B. unresponsive a few hours later. *Id.* ¶ 10.

Both Long and Baylor were aware of the potential suffocation hazard of placing blankets or other objects in the bassinet. *Id.* ¶ 11. Prominent labels on the bassinet warned as follows:

> "Infants have suffocated: . . . on soft bedding. Use only the pad provided by manufacturer. **NEVER** add a pillow, comforter, or another mattress for padding. . . . If a sheet is used with the pad, use only the one provided by the bassinet or cradle manufacturer or one specifically designed to fit the dimensions of the bassinet or cradle mattress."

*Id.* ¶ 15. Baylor and Long saw the warning label and fully understood that placing their child in the bassinet with a blanket could create a suffocation hazard. *Id.* ¶¶ 11-15.

Subsequently, the Philadelphia Police Department ("PPD") produced records of their investigation into C.B.'s death. *Id.* ¶ 23. Photos from the scene show that the bassinet mattress was covered with a thick gray blanket when C.B. was found, making it impossible for C.B.'s face to directly contact the mattress. *Id.* ¶¶ 25-27. Indeed, within minutes of C.B. being taken to the hospital, a responding PPD officer observed the gray blanket covering the bassinet mattress. Body Camera Footage at 5:19-5:40 (on file with the Court). In addition, contrary to his later deposition testimony, Baylor admitted in his statement to police that "[t]here was a blanket in there" when C.B. was placed in the bassinet. *Id.* ¶¶ 29-30. This blanket was not manufactured or sold by Defendants. *Id.* ¶ 28.

**B.    Post-Discovery Procedural History**

After the PPD records were produced, the parties jointly requested a status conference with the Court. *Id.* ¶ 32. At the time, Plaintiffs were represented by counsel. *Id.* ¶ 33. Long

3

was also a plaintiff. *Id.* ¶ 35. Based on the new information, Plaintiffs' counsel stated his intention to seek his clients' authorization to dismiss the case. *Id.* ¶ 33. Because of this, the Court vacated the remaining case management deadlines. *Id.* ¶ 34. Long withdrew her claims and Plaintiffs' counsel withdrew from the case. *Id.* at ¶ 35. Baylor proceeded *pro se*. *Id.*

### C. Christopher and Jason Baylor's Contentions[2]

Baylor now contends that someone must have placed the blanket in the bassinet after C.B. was taken to the hospital but before the PPD arrived on scene. Opp., ECF No. 55 at 3-4. In support, Baylor's brother claims that after C.B. was taken to the hospital he looked in the bassinet and saw nothing in there, "not even a toy." Jason Baylor's Second Aff., ECF No. 60 at 1. In further support of this contention, Baylor claims that video and photographs showing the blanket in the bassinet could not have been taken immediately after the accident because a search warrant of the house was not approved and executed until hours later. *Id.* (citing Search Warrant, ECF No. 53-11 at 73). Baylor also asserts that white froth from C.B.'s mouth and nose was found on the mattress, suggesting that C.B. suffocated directly on the mattress and the blanket was added later. ECF No. 55 at 4.

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material when its determination "might affect the outcome of the suit under the governing law."

---

[2] While Defendants' motion for summary judgment was pending, Defendants filed two motions relating to Plaintiffs' untimely filings in opposition to Defendants' motion for summary judgment. Because Baylor is an incarcerated *pro se* litigant and Defendants have responded to Plaintiffs' untimely filings, the Court will deny these motions. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013) (noting that courts afford procedural flexibility to *pro se* litigants and liberally interpret their filings, particularly when the *pro se* litigant is incarcerated).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is genuine if a jury could rationally find in favor of the non-moving party. *Id.*

The moving party has the initial burden of demonstrating the lack of a genuine dispute of material fact. Fed. R. Civ. P. 56(a). Once this burden is satisfied, the non-moving party must counter with "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). A party cannot rely solely "upon unsupported assertions, conclusory allegations or mere suspicions" when opposing a motion for summary judgment. *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010) (citation omitted). If there is a genuine dispute, the Court must view the facts in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Popa v. Harriet Carter Gifts, Inc.*, 52 F.4th 121, 125 (3d Cir. 2022). The Court's role at the summary judgment stage is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. The same summary judgment standard applies regardless of Plaintiffs' *pro se* status. *See Edwards v. Rice-Smith*, 606 F. Supp. 3d 151, 154 (E.D. Pa. 2022).

### III.   DISCUSSION

#### A.   Product Liability

To sustain a products liability claim, Plaintiffs must prove "that the product was defective, and that the defect was the substantial factor in causing the injury." *Rost v. Ford Motor Co.*, 151 A.3d 1032, 1037 n.2 (Pa. 2016) (citation omitted). Plaintiffs have alleged a design defect, but their theory supposes that C.B.'s face made direct contact with the mattress and that no other suffocation hazard was present in the bassinet. Indeed, Plaintiff's experts opined that C.B. suffocated because the child rotated in the bassinet and his face contacted the

memory foam mattress thereby restricting breathable air to his nose and mouth. The presence of a blanket in the bassinet created an independent suffocation hazard and contradicted Plaintiffs' theory. As a result, Plaintiffs lack evidence that the softness of the memory foam mattress -- and not the placement of the thick blanket over the mattress -- caused C.B. to suffocate.

At best, Plaintiffs could attempt to argue that the mattress together with the blanket caused C.B.'s suffocation. However, Plaintiffs have not advanced this theory, and they have presented no expert evidence supporting it. Expert testimony that a product defect caused a harm is necessary when "the subject matter of the inquiry is one involving special skills and training not common to the ordinary lay person." *Slatowski v. Sig Sauer, Inc.*, --- F.4th ---, 2025 WL 2178533, at *4 (3d Cir. 2025) (citation omitted) (interpreting Pennsylvania law). Here, expert testimony would be needed to explain how the mattress could have caused C.B.'s suffocation while it was covered by a thick blanket. *Cf. Micjan v. Wal-Mart Stores, Inc.*, Civ. Action No. 14-855, 2016 WL 4141085, at *9-12, *14 (W.D. Pa. Aug. 4, 2016) (denying summary judgment in infant sleep surface product liability case where Plaintiff presented expert evidence tying design of sleep surface to harm); *Brown v. Fisher-Price, Inc.*, C.A. No. N20C-01-067 PAW, 2024 WL 5197580 (Del. Super. Ct. Dec. 20, 2024) (interpreting Pennsylvania law) (same). However, none of Plaintiffs' experts addressed this scenario. Accordingly, Plaintiffs are without evidence to prove an essential element of their claims, namely, that the allegedly defective mattress caused C.B.'s injury.

To rescue the original theory, Baylor argues that someone must have tampered with the bassinet after C.B. was discovered and before the police photographed and videotaped the bassinet. This argument is not supported by any evidence. As an initial matter, Baylor's argument is belied by his own statement to police admitting that a blanket was present in the

bassinet when C.B. was put down to sleep.  Stmt. of Undisputed Facts, ECF No. 53 ¶¶ 29-30.  Baylor's new argument to the contrary is an attempt to create a dispute of material fact out of unsupported supposition.  Baylor has not succeeded.

Baylor relies on his brother's representation that after C.B. was taken to the hospital, he looked in the bassinet and saw nothing in there, "not even a toy."  Jason Baylor's Second Aff., ECF No. 60 at 1.  To Baylor, this serves as evidence that the blanket must have been planted in the bassinet later in the day, after C.B. was taken to the hospital.  This is not necessarily so.  Although the brother claims to have looked in the bassinet while others were at the hospital, the timing of his observation in relation to the PPD investigation is unclear.  While it is possible that the blanket was no longer in the bassinet when Baylor's brother observed it, it does not necessarily follow that the blanket was not in the bassinet when C.B. was found unresponsive.  Thus, Justin Baylor's affidavit does not present a genuine dispute as to a material fact.

Similarly, Baylor lacks evidence for his suggestion that the PPD photographs and video do not accurately depict the bassinet when C.B. was found unresponsive.  Baylor suggests that PPD only obtained photographs and video of the blanket in the bassinet when PPD executed a search warrant later in the day.  Consequently, Baylor argues, it was possible for someone to have put the blanket in the bassinet after C.B. was taken to the hospital but before the PPD searched the scene.  The evidence suggests otherwise.  PPD officers obtained video and photographs of the house and bedroom where the bassinet was located, including photographs and video of the bassinet itself, immediately after the incident.  Stmt. of Undisputed Facts, ECF No. 53 ¶ 24.  In fact, body camera footage obtained just moments after C.B. was taken to the hospital clearly shows the gray blanket covering the bassinet mattress.  Body Camera Footage at 5:19-5:40 (on file with the Court).

Plaintiffs also contend that white froth allegedly found on both the mattress and C.B.'s nose and mouth is evidence that the scene was altered. However, even if the mattress bears a white stain, Baylor has not advanced any record evidence supporting his theory of the origin of the stain. In particular, Baylor provides no competent evidence that white froth from C.B.'s mouth caused the stain on the mattress. In fact, Baylor previously stated that he "did not observe any vomit, milk, spit-up, blood or mucous" when he found C.B. unresponsive. *See* Denis Rosen, M.D.'s Report, ECF No. 53-7 at 6. Therefore, the presence of a stain on the mattress does not suggest that the scene was altered and does not create a genuine issue for trial.

Baylor's suspicions of tampering are contradicted by the record. Therefore, the Court is not bound to accept Baylor's version of events. *See Scott,* 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."). Baylor has offered only unsupported assertions, conclusory allegations, or mere suspicions, in support of his product defect claim. Therefore, summary judgment is appropriate.

### B.     Failure to Warn

Plaintiffs' failure to warn claim fails for a similar reason. Plaintiffs have offered no evidence that an inadequate warning caused C.B.'s death. To show proximate cause in a failure to warn case "the plaintiff must demonstrate that the user of the product would have avoided the risk had he or she been warned of it by the seller." *L.T. by and Through Copenhaver v. Kubota Mfg. of Am. Corp.*, 332 A.3d 47, 59 (Pa. Super. Ct. 2025) (citation omitted). Here, both Long and Baylor were aware of the potential suffocation hazard created by placing blankets or other

8

objects in the bassinet.  Stmt. of Undisputed Facts, ECF No. 53 ¶ 11.  Prominent labels on the bassinet warned as follows:

> "Infants have suffocated:  . . . on soft bedding.  Use only the pad provided by manufacturer.  **NEVER** add a pillow, comforter, or another mattress for padding. . . . If a sheet is used with the pad, use only the one provided by the bassinet or cradle manufacturer or one specifically designed to fit the dimensions of the bassinet or cradle mattress."

*Id.* ¶ 15.  Baylor and Long saw the warning label and fully understood that placing their child in the bassinet with a blanket could create a suffocation hazard.  *Id.* ¶¶ 11-15.  Nonetheless, the evidence shows -- and Baylor admitted -- that C.B. was placed in the bassinet with a blanket.  Therefore, Plaintiffs' failure to warn claims fail as a matter of law.  *See Phillips v. A-Best Prods. Co.*, 665 A.2d 1167, 1171 (Pa. 1995) (where user knew risk of exposure to silica and continued to expose themselves to silica, user could not establish causation in failure-to-warn claim).[3]

---

[3]   Plaintiffs' claims for breach of the implied warranty of merchantability also fail because such claims rise and fall with claims of product defect.  *See Chandler v. L'Oreal USA, Inc.*, 774 F. App'x 752, 754 (3d Cir. 2019).  Here Plaintiffs have failed to establish a product liability claim.  Thus, their claim for breach of the implied warranty of merchantability also fails.  *Id.*

## IV.    CONCLUSION

Plaintiffs have not produced evidence that the defects they identified caused C.B.'s death. Accordingly, the Court will grant Defendants' motion for summary judgment.

An appropriate order follows.

**BY THE COURT:**

_____
MARY KAY COSTELLO, J.